IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | |
|---|---|
| ICM OF AMERICA, INC. | * |
| | * |
| Plaintiff | * |
| | * |
| V. | * |
| | *   NO: 4:16CV00160 SWW |
| LEICA GEOSYSTEMS, INC.; | * |
| STRIBLING EQUIPMENT LLC; and | * |
| JERRY SWANSON | * |
| | * |
| Defendants | * |
| | * |

## ORDER

Plaintiff ICM of America, Inc. ("ICM") brings this diversity action against Defendants Leica Geosystems, Inc. ("Leica"), Stribling Equipment LLC ("Stribling"), and Jerry Swanson ("Swanson"), asserting multiple claims including intentional interference with business expectancies. Before the Court are (1) Leica's motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6) (ECF Nos. 22, 23) and ICM's response in opposition (ECF Nos. 38, 39) and (2) Swanson's motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(2) and 12(b)(6) (ECF Nos. 48, 49), ICM's response in opposition (ECF Nos. 52, 53), and Swanson's reply (ECF No. 55). After careful consideration, and for reasons that follow, the motions to dismiss are denied.

### I. Complaint Allegations

The following facts are taken from the second amended complaint. Plaintiff ICM sells construction equipment in Arkansas and Oklahoma, and Defendant Leica manufactures machine control ("MC") products, which are used in the operation of heavy construction equipment. In 2013, ICM and Leica entered an oral agreement (the "Agreement") that granted ICM a non-exclusive license to use the Leica trade name, trademark and related characteristics and to sell

Leica MC products in Arkansas and Oklahoma. Subsequently, ICM purchased inventory from Leica and devoted significant time developing a customer base for Leica's products. Before and after the Agreement, Leica's representative David Rowlett ("Rowlett") told ICM that Leica did not grant exclusive licenses to sell the company's MC products.

In 2014, Defendant Stribling, a Mississippi LLC that sells construction equipment, became a Leica dealer. Defendant Swanson, a Mississippi resident, is Stribling's CEO. In December 2014, an Arkansas excavating contractor requested and verbally accepted a sales quote from ICM to replace stolen MC equipment, which he had purchased from Stribling. Leica's Rowlett demanded that ICM provide him a copy of the quote, claiming that Stribling had accused ICM of giving the MC equipment away. After Rowlett reviewed ICM's quote, he agreed that ICM's price was fair.

In early 2015, Rowlett demanded that ICM provide him a list of the company's top twenty sales prospects, and he requested similar information from Stribling in order to "police any prospective deals that both ICM and Stribling were working on."[1]

In July 2015, ICM provided a sales quote for MC equipment to a long-time Arkansas customer, Arco Excavating of Pea Ridge, Arkansas ("ARCO"). Following orders from Swanson, Rowlett demanded that ICM rescind the quote because Stribling was also pursuing a sale to ARCO. Rowlett informed ICM's representative Bruce McFadden ("McFadden") that "if ICM and Stribling were pursuing the same customer[,] Stribling would always prevail[,] and if ICM received the order, Leica would not ship the order."[2] Rowlett also told McFadden that

---

[1] ECF No. 37, at 5, ¶ 30.

[2] ECF No. 37, at 5, ¶ 31.

"Stribling was about to make a large stock order from Leica and that Leica would not under any circumstance risk losing the Stribling stock order."[3]

Based on Rowlett's statements to McFadden, ICM ceased efforts to sell to ARCO. Subsequently, Swanson demanded that Leica terminate its agreement with ICM, and on January 12, 2016, Leica cancelled ICM's license to sell Leica equipment. In connection with this cancellation, Rowlett told ICM representatives that "Stribling wanted to be the exclusive [Leica] dealer in Arkansas and insisted that Leica cancel ICM's . . . franchise for Arkansas." [4]

With its second amended complaint, ICM brings civil conspiracy and tortious interference claims against Leica, Stribling, and Swanson. Additionally, ICM sues Leica for breach of contract and violation of the Arkansas Franchise Practices Act and seeks to recover under the theory of promissory estoppel.

## II. Leica's Motion to Dismiss

On April 11, 2015, Leica filed a motion to dismiss ICM's original complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. On May 2, 2016, twenty-one days later, ICM filed an amended complaint as permitted under Rule 15(a)(B),[5] and on May 11, 2016, ICM filed a second amended complaint with leave of Court, to correct a typographical error contained in the amended complaint. The second amended complaint eliminates certain parties and claims, which renders moot several of Leica's arguments in support of dismissal. Accordingly, the

---

[3]*Id*.

[4]ECF No. 37, at 6, ¶ 34.

[5]Rule 15(a)(B) provides that a party my amend its pleading as a matter of course within 21 days after service of a responsive pleading or 21 days after service of a motion under 12(b), (e), or (f), whichever is earlier.

Court will address Leica's motion only to the extent that the asserted grounds for dismissal remain applicable.

When ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court must take as true the alleged facts and determine whether they are sufficient to raise more than a speculative right to relief. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555–56 (2007). The Court does not, however, accept as true any allegation that is a legal conclusion. *Ashcroft v. Iqbal,* 556 U .S. 662, 678 (2009). The complaint must set forth "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678.

**Count II - Tortious Interference**

Under Arkansas law,[6] the elements of tortious interference are as follows: (1) the existence of a valid contractual relationship or a business expectancy; (2) knowledge of the relationship or expectancy on the part of the interfering party; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted. *Vowell v. Fairfield*

---

[6]The parties cite Arkansas law in their respective briefs, without discussion as to which state's law governs the substantive issues in this case. When federal jurisdiction is based on diversity of citizenship, a federal court looks to the choice-of-law principles of the forum state–in this case Arkansas--and applies those principles as the forum state would. *Simpson v. Liberty Mut. Ins. Co.*, 28 F.3d 763, 764 (8th Cir. 1994). In tort cases, the Arkansas Supreme Court considers the doctrine of *lex loci delicti*, which favors the law of the place where the alleged wrong occurred, in conjunction with five factors promulgated by Dr. Robert A. Leflar. *See Ganey v. Kawasaki Motors Corp., U.S.A.,* 366 Ark. 238, 251, 234 S.W.3d 838, 847 (2006). The Court finds that Arkansas law is applicable to the claims in this case, as ICM's place of business is located in Arkansas and the alleged injury occurred in the state.

*Bay Community Club*, 58 S.W.3d 324, 329 (Ark. 2001).  Arkansas also requires that the conduct of the interfering party be at least "improper," and the following factors set forth in the Restatement (Second) of Torts provide guidance as to what is improper in this context:

> (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference and the relations between the parties.

*See Baptist Health v. Murphy*, 2010 Ark. 358, 15-16, 373 S.W.3d 269, 281-82 (2010)(citing *K.C. Props. of N.W. Ark., Inc.*, 373 Ark. at 26-27, 280 S.W.3d at 11-12 (2008)).

If a plaintiff establishes the foregoing elements, a defendant may still prevail if it can show that its conduct was justified or privileged. *See Conway Corp. v. Construction Engineers, Inc.*, 300 Ark. 225, 782 S.W.2d 36, 40 (1989).   This affirmative defense permits the defendant to "show that the interference is privileged by reason of the interests furthered by his conduct, but the burden rests upon him to do so." *Stebbins & Roberts, Inc. v. Halsey*, 265 Ark. 903, 906, 582 S.W.2d 266, 267 (1979). The defendant's economic interest may qualify as the basis for a privilege, but that interest must be more than mere business expectation:

> Where the defendant acts to further his own advantage, other distinctions have been made.  If he has a *present, existing economic interest to protect*, such as the ownership or condition of property, or a prior contract of his own, or a financial interest in the affairs of the person persuaded, he is privileged to prevent performance of the contract of another which threatens it.
>
> *But where his interest is merely one of prospective advantage, not yet realized, he has no such privilege*. The typical case is that of business competition. The courts have held that the sanctity of the existing contract relation takes precedence over any interest in unrestricted competition, and have enforced as law the ethical precept that one competitor must keep his hands off the contracts of another. This is true of contracts of employment, where workmen are hired away from an employer, as well as competitive business dealings in general.

*Stebbins & Roberts, Inc. v. Halsey*, 265 Ark. 903, 906-07, 582 S.W.2d 266, 267-68 (1979)(emphasis added).

Here, ICM alleges that Leica interfered with its business expectancy for the purpose of assisting Stribling. Specifically, ICM charges that Leica "intentionally, improperly, and without justification" required ICM to submit a list of prospective customers and forced it to withdraw a quote to Arco in order to prevent ICM from competing with Stribling. ICM alleges that as a direct result of these actions, it suffered actual damages including lost profits. Viewing the allegations in a light most favorable to ICM, the Court finds that ICM states a plausible claim for tortious interference.

Leica argues that the complaint allegations establish, as a matter of law, that any alleged conduct on its part amounted to privileged competition. However, ICM alleges that it sold Leica's products, not that Leica was its business rival or competitor. *See Kinco, Inc. v. Schueck Steel, Inc.*, 283 Ark. 72, 77-78, 671 S.W.2d 178, 181 (1984)(quoting W. Prosser, Law of Torts, § 130 (3rd ed. 1971)(recognizing a privilege to compete, noting "it is no tort to beat a business rival to prospective customers"). The complaint allegations charge that Leica forced ICM to withdraw its price quote to ARCO in order to help Stribling because "Stribling was about to make a large stock order from Leica and . . . Leica would not under any circumstances risk losing the Stribling stock order."[7] These allegations simply do not indicate that Leica engaged in privileged competition or that Leica acted to protect an existing contract or a present, existing economic interest. The affirmative defense of privilege is not established on the face of the complaint and therefore does not provide a basis for dismissal under Rule 12(b)(6).

---

[7]ECF No. 37, ¶ 31.

**Count IV - Breach of Contract**

ICM asserts that the Agreement amounted to an oral franchise agreement, which Leica breached by, among other things, failing the duties of good faith and fair dealing. Leica argues that ICM fails to allege that it breached a specific term of the Agreement and that ICM's "bald recitations" are insufficient to state a claim for breach of contract.

"Under Arkansas law, every contract contains an implied covenant of good faith and fair dealing." *Yarborough v. DeVilbiss Air Power, Inc.*, 321 F.3d 728, 732 (8th Cir. 2003)(citing *TCBY Sys., Inc. v. RSP Co., Inc.*, 33 F.3d 925, 928–29 (8th Cir.1994); *Richard Short Oil Co. v. Texaco, Inc.*, 799 F.2d 415, 421–22 (8th Cir.1986); *Cantrell–Waind & Assoc. v. Guillaume Motorsports, Inc.*, 62 Ark. App. 66, 71–72, 968 S.W.2d 72, 75 (1998)). "As is the case with the contract's express terms, the implied covenant is part of the contract and creates contractual obligations that are actionable." *Yarborough v. DeVilbiss Air Power, Inc.*, 321 F.3d at 732. The Eighth Circuit has recognized that "under Arkansas law there are circumstances in which the implied duty of good faith and fair dealing may create obligations that operate to constrain actions that are inherently in a party's control." *Yarborough,* 321 F.3d at 733.

This is not a case in which the plaintiff fails to allege any breach separate from the breach of a duty to act in good faith. ICM charges that Leica terminated the Agreement without cause, without notice, and without giving ICM an opportunity to cure. Accepting these allegations as true, as the Court must do at this stage in the case, the Court finds that ICM has stated a plausible claim for breach of contract.

**Count VI - Civil Conspiracy**

ICM charges that "Leica, Stribling, and Swanson, through their agents and employees

agreed with, conspired with and acted in concert with each other to cause . . . Leica to violate the AFPA and to interfere with [ICM's] business expectancies . . . ."[8] Under Arkansas law, civil conspiracy is an intentional tort requiring a specific intent to accomplish the contemplated wrong. *See Dodson v. Allstate Ins. Co.*, 345 Ark. 430, 445, 47 S.W.3d 866, 876 (2001). To prove a civil conspiracy, ICM must show "a combination of two or more persons to accomplish a purpose that is unlawful or oppressive or to accomplish some purpose, not in itself unlawful, oppressive or immoral, by unlawful, oppressive or immoral means, to the injury of another." *Id.* A conspiracy may be shown by evidence of an actual agreement or understanding between conspirators, but it may also be shown by circumstantial evidence:

> A conspiracy may be shown by direct evidence of an actual agreement or understanding between conspirators, but it may also be shown by circumstantial evidence. It also may be inferred from actions of alleged conspirators, if it be shown that they pursued the same unlawful object, each doing a part, so that their acts, although apparently independent, are in fact connected and cooperative, indicating a closeness of personal association and a concurrence of sentiment.

*Mason v. Funderburk*, 247 Ark. 521, 529, 446 S.W.2d 543, 548 (1969)(citations omitted).

Leica argues that ICM fails to state a civil conspiracy claim because no facts show the existence of an agreement between Leica and Stribling. However, from the facts alleged, it could be inferred that Stribling complained about ICM, urged Leica to commit the complained-of conduct, and Leica agreed. For example, ICM alleges that Rowlett demanded a copy of ICM's customer list after Stribling accused ICM of "giving . . . MCE away." ICM further alleges Stribling "insisted" that Leica cancel ICM's franchise agreement. In light of these allegations, the Court finds that ICM states a plausible civil conspiracy claim.

---

[8]ECF No. 37, ¶ 89.

### III. Swanson's Motion to Dismiss for Lack of Personal Jurisdiction

Swanson contends that the second amended complaint is void of a single allegation supporting personal jurisdiction over him in this forum. Although ICM bears the ultimate burden of proof on the issue, personal jurisdiction over a defendant need not be proved by a preponderance of the evidence until trial or until the court holds an evidentiary hearing. *See Dakota Industries, Inc. v. Dakota Sportswear, Inc*. 946 F.2d 1384, 1387 (8th Cir. 1991)(citing *Cutco Ind. v. Naughton*, 806 F.2d 361, 365 (2d Cir.1986)). To survive the motion to dismiss, ICM must allege sufficient facts to support a reasonable inference that Snowden may be subjected to jurisdiction in Arkansas. *See Steinbuch v. Cutler*, 518 F.3d 580, 585 (8th Cir. 2008). ICM need only make a *prima facie* showing of jurisdiction, and the Court must look at the facts in the light most favorable to ICM, and resolve all factual conflicts in ICM's favor. *See Dakota Industries, Inc. v. Dakota Sportswear, Inc*. 946 F.2d 1384, 1387 (8th Cir. 1991).

This Court may assume jurisdiction over Swanson to the extent permitted by the long arm statute of the forum state. Arkansas's long-arm statute permits the assertion of jurisdiction to the fullest extent allowed by the Fourteenth Amendment's Due Process Clause, which permits the exercise of personal jurisdiction over a nonresident defendant that has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.

The Supreme Court has held that in order to exercise personal jurisdiction, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and

protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S. Ct. 1228 (1958). Five factors are normally considered when resolving a personal jurisdiction inquiry: (1) the nature and quality of the defendant's contacts with the forum state; (2) the quantity of those contacts; (3) the relation of the cause of action to the contacts; (4) the interest in the forum state in providing a forum for its residents; and (5) the convenience of the parties. *Digi-Tel Holdings, Inc. v. Proteq Telecommunications (PTE), Ltd.*, 89 F.3d. 519, 522-23 (8th Cir. 1996).[9] The first three factors are closely related and are of primary importance, while the last two factors are secondary. *Id.* at 523.

Citing *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482 (1984), ICM argues that "even if Swanson had limited physical contact with the state, his tortious conduct, from his official capacity as CEO of Stribling, caused harmful effects in Arkansas."[10] In *Calder,* a California actress filed a libel suit in California against Florida newspapermen, who wrote an article that was published in the National Enquirer. Although the defendants wrote and edited the article in Florida, the Supreme Court held that personal jurisdiction was proper because the defendants' "intentional, and allegedly tortious, actions were expressly aimed at California" and "they knew [it] would have a potentially devastating impact . . . there." *Calder*, 465 U.S. at 789, 104 S. Ct. at

---

[9]The Supreme Court has identified two types or theories of personal jurisdiction: general and specific. General personal jurisdiction exists when the defendant has "continuous and systematic" contacts with the forum state, even if the injuries at issue in the lawsuit did not arise out those contacts. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16, 104 S.Ct. 1868 (1984). Specific personal jurisdiction, in contrast, exists only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state. *Id.* at 414, 104 S.Ct. 1868. Here, Snowden's alleged conduct is related to the dispute giving rise to this litigation, and general jurisdiction analysis is not warranted.

[10]ECF No. 53, at 4.

1487. The *Calder* Court "thus approved an 'effects' test that allows the assertion of personal jurisdiction over non-resident defendants whose acts "are performed for the very purpose of having their consequences felt in the forum state." *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1390-91 (8th Cir. 1991).

> Applying the *Calder* "effects" test, the Eighth Circuit has held that
>
> a defendant's tortious acts can serve as a source of personal jurisdiction only where the plaintiff makes a *prima facie* showing that the defendant's acts (1) were intentional, (2) were uniquely or expressly aimed at the forum state, and (3) caused harm, the brunt of which was suffered-and which the defendant knew was likely to be suffered-[in the forum state].

*Johnson v. Arden*, 614 F.3d 785, 796 (8th Cir. 2010)(quoting *Lindgren v. GDT, LLC*, 312 F. Supp.2d 1125, 1132 (S.D. Iowa 2004)).

Here, ICM alleges that Snowden, the CEO of Stribling, interfered with its business expectancies by insisting that Leica force ICM to withdraw its price quote to ARCO and by demanding that Leica terminate ICM's license to sell Leica products. By affidavit, Swanson denies that he had any involvement in the decision to terminate ICM as a Leica dealer, but he offers no testimony regarding the allegation that he insisted that Leica force ICM to withdraw its price quote to ARCO.[11] Swanson further testifies that so far as he can recall, he never entered Arkansas or sent communications into the state for the purpose of taking action against ICM.

Swanson notes that his position as the CEO of Stribling does not, without more, subject him to suit in Arkansas. However, ICM charges that Swanson was a primary participant in alleged wrongdoing that is the subject of this lawsuit and that his tortious conduct was

---

[11]*See* Swanson Aff., ECF No. 48-1.

intentionally directed at Arkansas. Viewing the allegations in a light most favorable to ICM, the Court finds that Swanson's dictate to Leica regarding ARCO was intentionally directed at business and residents in Arkansas.[12] Furthermore, Swanson knew that ICM would feel the consequences of losing its long-time customer in Arkansas, and he should have reasonably anticipated being haled to court in this forum. The Court finds that ICM has met its burden to make a *prima facie* showing of personal jurisdiction over Swanson.

### IV. Swanson's Motion to Dismiss for Failure to State a Claim

Swanson contends that the second amended complaint is void of factual allegations concerning his conduct and that all allegations related to him are conclusory. To the contrary, ICM alleges that Swanson interfered with and conspired to interfere with ICM's business expectancies by demanding that Leica force ICM to withdraw its price quote to ARCO and terminate ICM's distributor license. Just as ICM states plausible claims against Leica for tortious interference and civil conspiracy, it has alleged facts sufficient to sustain its claims against Swanson.

### V. Conclusion

For the reasons stated, Defendant Leica Geosystems, Inc.'s motion to dismiss (ECF No. 22) is DENIED, and Defendant Jerry Swanson's motion to dismiss (ECF No. 48) is DENIED.

IT IS SO ORDERED THIS 26TH DAY OF JULY, 2016.

/s/Susan Webber Wright
UNITED STATES DISTRICT JUDGE

---

[12]Stribling was also pursuing ARCO, and it is reasonable to infer that he knew that ARCO or "Arco Excavating of Pea Ridge, Arkansas" was located in Arkansas.